## DAYTON ENGINEERING LABORATORIES CO. v. KENT.

(Circuit Court of Appeals, Third Circuit. March 18, 1920.)

No. 2509.

1. **Patents ⬚⟶328—Claims for ignition system held limited and not infringed.**

Claims 4, 5, 7, and 8 of the Kettering patent, No. 1,223,180, for an ignition system using a thermal resistance reducing the current on an abnormal flow *held* not infringed with respect to its function of reducing the current to prevent the depletion of the storage battery when the engine is not running, and also *held* not broad enough, as limited by the prior art, to cover the function of regulating the flow of the current for variable speeds of the engine under running conditions.

2. **Patents ⬚⟶167(1)—Limitation of specifications to be read into claims; "negligible quantity."**

Where the specifications of an application for a patent for an ignition system stated that existing systems permitted a continuous flow of current and a consequent partial or complete depletion of the source of electrical energy, that the object of the invention was to permit the normal flow, but on an abnormal or continuous flow to reduce the current to a substantially negligible quantity, and thus conserve the supply, though the main circuit was closed for an extended range of time, and that such continuous flow, if permitted, would materially reduce the supply of current within a short time, the term "negligible quantity" meant something materially less than that which would result in a complete or material partial depletion of the batteries within a comparatively short time, and the claims should be so limited.

3. **Patents ⬚⟶241—Defendant entitled to use well-known device, if not accomplishing same purpose as that claimed.**

Where a thermal resistance was a well-known device in the electrical art prior to a patent for an ignition system using such resistance to cut down an abnormal flow of the current when the engine was not running, defendant had a right to use it for any other purpose than that of the patent, if he did not in effect accomplish the same result or perform the same function as that claimed for the patented apparatus.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the Dayton Engineering Laboratories Company against A. Atwater Kent, doing business as the Atwater Kent Manufacturing Works. From a decree dismissing the bill (260 Fed. 187), complainant appeals. Affirmed.

Drury W. Cooper and John C. Kerr, both of New York City, and Cyrus N. Anderson, of Philadelphia, Pa., for appellant.

Cornelius D. Ehret, Frederick A. Blount, and Alston B. Moulton, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. In the court below the Dayton Engineering Laboratories Company, owner of patent No. 1,223,180, granted to Charles F. Kettering, on April 17, 1917, for an ignition system, charged A. Atwater Kent, the appellee, with infringement of claims 4, 5, 7, and 8 thereof. On final hearing, after an opinion reported in

260 Fed. 187, the bill was dismissed. Thereupon the plaintiff took this appeal.

In view of the full discussion in the opinion of the learned judge of the court below of the intended uses, construction, and mode of operation of the apparatus of the patent and that which it is claimed infringes it, we deem it unnecessary to describe either with any particularity. Broadly stated, the invention of the patent resides in the use, in the main circuit of an ignition system, of a thermal resistance which will readily permit the normal flow of electrical current through the circuit, but upon an abnormal flow will reduce and cut down the current. As a result, it is claimed, the patented device will perform two separate and distinct functions, viz.: (1) The reduction of current to prevent the depletion of a storage battery when the engine is not running, or, as it is expressed in the case, is on or at "a dwell"; (2) the regulation of the flow of current for high and low speeds, respectively, or, in other words, the furnishing of a variable current for variable speeds. Each of these functions are so different, so far as the applicability of the facts of this case is concerned, that they should be considered separately. We accordingly do so, and in the order in which they are before stated.

[1] 1. One of the main defects in certain of the ignition systems of the prior art was that when the engine was not running—when it was on or at a dwell—and the current was, through carelessness or otherwise, not cut off, the current would continue to flow through the circuit and deplete the storage battery, thus wasting and materially reducing the limited supply of current stored therein. Accordingly, the main purpose which Kettering sought to accomplish, and the particular advantage claimed for his invention, is that it will reduce the flow of current during dwells, as expressed in the specifications, to "substantially a negligible quantity."

[2] While, of course, it cannot be stated with mathematical exactitude what a "negligible quantity" is, there is no real difficulty in ascertaining, for the purposes of this case, what is meant by that expression, when the object of the patent is considered in connection with the statement in the specifications of the defects in the prior art. As to the ignition systems of the prior art, the patentee says that, when the circuit remains closed, they permit—

"a continuous flow of current to pass therethrough and a consequent partial or complete depletion of the source of electrical energy."

He then states that the object of his invention is to provide a means to—

"readily permit the normal flow of current therethrough, but which, upon an abnormal or continuous flow of current from the electrical source, will act to reduce and cut down the amount of current flowing through the circuit, to substantially a negligible quantity, and thus conserve the supply of current, even though the main circuit is closed, * * * for an extended length of time."

Again:

"If this flow [a continuous flow] of current is permitted to exist, as is generally the case, in ignition systems now in use, the supply of current con-

tained in the battery or accumulator *20*, would be materially reduced within a short time."

It is therefore clear that a "negligible quantity" is something materially less than that which will result in a complete or a material partial depletion of the battery within a comparatively short time. While no claim, in terms, so limits the function of the patented apparatus, yet such a limitation must be clearly read into the claims, unless we are to disregard the patentee's own statement of what differentiates his apparatus from those of the prior art. The thermal resistance in the main or primary circuit of the defendant's alleged infringing apparatus is used only in connection with an ignition system having a generator operated by the engine, and its purpose is not to reduce the current in the sense of the patent, but merely to prevent the overheating of its primary induction coil. Indeed, for engines which do not have such a generator, the defendant furnishes, or at least recommends the use of, another device which is so constructed that, when the engine is on a dwell, there can be no flow of current whatever.

[3] Of course, as a thermal resistance was a well-known device of the art, the defendant has a right to use it for any other purpose than that of the patent, provided that he does not also in effect accomplish the same result or perform the same function as that claimed for the patented apparatus; especially since the extent of the resistance which it will effect, and the consequent reduction of the current which it will produce, is dependent upon the length and size of the wire used in the resistance coil. It is therefore manifest that unless the alleged infringing apparatus reduces the current, on dwells, to "substantially a negligible quantity," as that expression is above construed, it does not infringe. As found by the court below, the evidence shows that, when it was used during a test made on plaintiff's behalf, a given supply of current lasted for 39 hours and 15 minutes, and that, when the same apparatus was used without the thermal resistance, the same supply of current lasted 31 hours and 25 minutes. Likewise, the evidence on behalf of the defendant is that the final or stable current upon a dwell when the alleged infringing device is used is from 60 to 64 per cent. of its value at the inception of the dwell, and this notwithstanding that one-quarter of such reduction is effected by the rise in temperaturue and consequent resistance in the primary induction coil. The evidence, therefore, does not demonstrate, we think, that the alleged infringing apparatus reduces the flow of current on dwells to "substantially a negligible quantity," as hereinbefore defined. It accordingly follows that no infringement of the patent has been shown, so far as its function in respect to dwells is concerned.

2. Assuming, without so deciding, that there is a sufficient disclosure of the second of the before-stated functions in the specifications, and that under running conditions the thermal resistance which the defendant uses in his alleged infringing apparatus does effect a variable current as the speed of the engine varies, although manifestly the amount of current must largely, if not wholly, be dependent upon the speed of the engine, irrespective of the thermal resistance, because

under running conditions the current is supplied by the generator, still we think there was no error in the decree of the court below, because, in our judgment, none of the claims which are now relied upon, when properly construed, is broad enough to embrace this feature or function. The use of a thermal resistance for the purpose of diminishing the flow of current was so well known in the electrical art that, when it was imported into a particular branch of that art, and was there used to effectuate its old and well-known purpose, and it is sought to base invention upon such use, the claims must be strictly construed. Especially is this so when the main object of the invention was to protect the battery from depletion on dwells, and the other purpose was merely subsidiary, possibly an afterthought, if, indeed, it is useful at all in an apparatus where the current is generated by the engine, and when that other purpose was specially covered by another claim (6), which is not now relied upon. A brief analysis of claims upon which the plaintiff does rely will demonstrate that they cannot, when strictly construed, be held to cover the function now in question.

In claim 4 the purpose of the thermal resistance is stated to be to diminish the flow of current "when an abnormal flow of current occurs therein"; and in claim 5 it is said to be its purpose "to protect the circuit against the continued flow of the abnormal current." Claim 7 likewise designates its function to be the increasing of the resistance in the circuit "when there is an abnormal flow of current through said circuit." There is no abnormal flow of current, in the sense of the patent, when the engine is running at low speed, when the circuit is closed and broken intermittently, with varying degrees of frequency, but only when the engine is not running at all, when the circuit remains closed over an extended period of time, and when the flow of current is consequently continuous. The "abnormal flow" is referred to in the specifications in connection with the dwell condition alone. Hence all of these last three claims should be limited to dwell conditions.

Claim 8 is, however, broader. It states that the purpose of the thermal resistance is "to limit the flow of current through the main circuit." This, by a broad construction, might be held to cover the function now under discussion. But, as before noted, it is not entitled to a broad construction. Moreover, according to the claim, the thermal resistance becomes effective by the action of the interrupter in closing the circuit. During running conditions, the circuit is intermittently opened and closed—not left closed. Therefore a strict construction of this claim likewise confines it to dwell conditions.

Having thus found that there was no infringement, it becomes unnecessary to pass on the other grounds relied upon by the defendant, or the further question, which the specifications themselves suggest, whether the several claims are not, indeed, restricted solely to an apparatus using a storage battery, not charged by a generator operated by the engine, as the source of electrical supply. Upon that question we express no present opinion.

The decree below is affirmed, with costs.